Thank you, Judge. May it please the court. First, let me say I apologize for not being able to appear in person. It would have been an honor to do so. It's still an honor to argue before the court, but please accept my apologies, on behalf of myself and my client, for not being able to appear in person. That's fine. Your Honor, in this case, the immigration judge failed to afford due process to Juan Mendoza. And furthermore, the conviction documents entered into evidence by the government were not the, quote, narrow set of documents that form the record of conviction, unquote. In fact, none of them, in our opinion, qualifies as proper indicia of conviction. First, as to the immigration judge failing to afford due process, as you know, Mr. Mendoza appeared without counsel. Mr. Mendoza was from the New York area, was detained in the New York area, held for a short period of time, and then sent on a journey that many aliens find themselves in, where he landed in Florence, Arizona. And that is where he appeared before the immigration judge. Appearing without counsel, the immigration judge had a duty outlined in his own benchmark to afford Mr. Mendoza, an alien without representation, an adequate explanation as to the procedural rights afforded to Mr. Mendoza. Didn't he give him a preliminary explanation of his rights? Judge, on the current record we have, there is no inclusion of that colloquy, so to speak. It indicates that it's on another tape that was not part of this record. It appears that there was some mention of rights, but it's not clear what they were. Exactly what are the documents that are in evidence in respect to his conviction? Your Honor, there's a number of documents, kind of as I described in the brief, pardon my common language, but it's kind of a hodgepodge of documents. There appears to be an order of protection. There is a form under the headline of a superior court information indicating that the satisfaction of the court, that a waiver of indictment had been executed. There was a signed waiver of indictment by defense counsel and Mr. Mendoza. There is a waiver of right to appeal. It's signed, it's not certified or court stamped. There is some type of commitment paperwork and then what appears to be some handwritten entries. On a court form, again, it's not clear who made these entries. They're not certified, there's no court stamp. And then finally, that's the extent of it. The interesting thing is, and the ironic thing is, is that I see it happen. There's a line at the Queens County Courthouse, the Supreme Court Clerk's Office, where for $5 anyone can go and get a copy of the Certificate of Conviction. It's not a very complicated procedure. I know the United States government could handle that. Yet the one true document, the one document that would be effective here, the Certificate of Conviction, a certified copy of the Certificate of Disposition, is not part of the record. The problem is that when the court starts considering ancillary documents, for instance, I know it's not part of the record on appeal and I'm not arguing otherwise, but just to give an example, the minutes from the plea, there is no factual allocution to penetration by the part of the defendant in the plea minutes. When you start considering these ad hoc documents, you never know what you're going to find. There is one reliable document, and that is the certified copy of the Certificate of Conviction. And that is not part of the record in this case. And yet it's so simple to get, and in so many cases the government fails to do so. So in this case, where Mr. Mendoza was appearing without counsel, the court had, I believe, an extra obligation to ensure not only that he was aware of his rights, but an explanation. I believe that the judge owed Mr. Mendoza an explanation about his procedural rights, including his right to object to evidence offered by the government. And there is no such explanation. The judge ignored the procedural guidelines that are afforded to someone who appears without counsel. Counsel, I thought that, as I looked at the record, that his objection was not so much to the fact of his prior conviction, but that it didn't qualify as an aggravated felony. Am I wrong? I would never call the court wrong. I think that to state that his concern wasn't the admission of the documents presupposes that he was aware of his rights to object to the documents, Your Honor. And in this case, he wasn't explained. It's certainly not on the record, but I believe it's also in the record that we do have. It's clear that he has not explained his right to object to the documents. All the judge asks him about the documents is do they, quote-unquote, relate to him, which really is asking him nothing. Had he had competent counsel, he certainly, competent counsel, would have objected to the admission of these documents. Competent counsel wouldn't have conceded removal. Competent counsel would never have handed over the letter from the lawyer that incriminated Mr. Mendoza even further. And so this is a case where, although I agree, Your Honor, he did file that motion having to do with the analysis of whether the underlying offense was an aggravated felony. Obviously not prepared. It's clear the document was not prepared solely by Mr. Mendoza. I believe he was assisted by the Florence Project in that endeavor at that time when he later came to court with that motion. But he clearly, at the first hearing, he objects to going forward. He denies the charge. And when we come back to court on the next court date, the immigration judge asks him solely, do these documents relate to you? And that clearly falls short of the mandate of the immigration court to afford Mr. Mendoza procedural due process. Did you want to save some time for rebuttal? I don't think so, Judge. I do have a stopwatch going. I'm aware I'm about 8 minutes and 10 seconds in according to my clock. And so I do want to make a couple final comments in my remaining time. The government's argument regarding prejudice presupposes the validity of the conviction documents, and we do not concede that. We don't concede the validity of the conviction documents. It isn't the, quote, narrow set of documents that this court has made clear qualify. Those documents include an indictment, but only in conjunction with a signed plea agreement, which we don't have in this case. There is no judgment of conviction. There is no minute order fully documenting the judgment. There are no jury instructions. There's no signed guilty plea or transcript from the plea proceedings. So none of the documents offered by the government and considered by the immigration judge qualify as a proper convicting document, and it was error for the court to consider them and for the Board of Immigration Appeals to allow it also. So we would ask the court to reconsider the decision of the Board of Immigration Appeals and the denial of his procedural due process, and we thank you for your time. Okay. Thank you, counsel. We'll hear from the government. He's also appearing by phone. Ms. Allen? Yes. Good morning, Your Honor. Good morning. May it please the court, Ned Allen for response and Eric Holder. Could you keep your voice up there or close to the phone? Oh, yes. I'm sorry. There we go. Okay. Very good. Your Honor, the documents relied upon by the immigration judge were not a hodgepodge of documents. The conviction documents, all of which are included in the record, established by clear and convincing evidence that Petitioner was convicted of rape in the third degree under New York Penal Law 130.25 subsection 1. Your Honor, Petitioner ignores INA 240C3B, which indicates that any documents prepared by the court of conviction indicating the existence of a conviction shall constitute proof thereof. In addition, 8 CFR 1003.41D provides that any other evidence that reasonably indicates the existence of a criminal conviction shall constitute proof thereof. The superior court information, number 1343-2006. Counsel? Yes. Counsel, Judge Fletcher has a question for you. Counsel, just tell us which documents show that he was convicted of rape and exactly which ones and what do they say? Sure, Your Honor. First, the charging document, which is the superior court information, which appears on Administrative Records 88 and 89, charges him with only one count, and that is rape in the third degree, very specifically 130.25 subsection 1. The second page of that charging document proceeds to include the language of that subsection, which charges him with engaging in sexual intercourse with a female who is incapable of consent by reason of some factor other than being less than 17 years old. That unquestionably mirrors the language of 130.25 subsection 1. In addition to that very clear charging document, there are 1, 2, 3, 4, 5, 6 other documents that specifically reference that charging document, and I can go through and list them for you. There's the waiver of the right to appeal and other rights, signed by Petitioner, which references the superior court information. There's the waiver of indictment by grand jury, in which Petitioner acknowledged that he had read the charging document. There's the order of protection, also referencing the information, charging him under 130.25. On that document, tell me again what it is and what it says. I'm sorry, which document? The one you just referenced. The order of protection? Yes. That is Administrative Record, page 94, and that is indicating it's a temporary order of protection, indicating that he should refrain from communication with the victim, basically. It's signed by him, and it references the charges and the indictment number. That doesn't prove anything, I guess. Your Honor, if I may continue. The document that the government argues is very clear evidence of the conviction, more importantly, is on Administrative Record, page 98. That's the sentence and commitment form, which clearly checks the box. Defendant having been convicted of the crime, rape in third degree, 130.25, sentenced to 105 days imprisonment, designated as a sex offender. That's Administrative Record, page 98. That, in conjunction with the charging document, is evidence of the conviction under both the statute, which provides that any document prepared by the Court of Conviction indicating the existence of the conviction shall constitute proof thereof. Why didn't the government get the certified copy of the conviction? Your Honor, I can't respond to you as to why DHS was unable to provide that, but I can say that DHS did provide a fairly large number of documents here. And as to why they didn't get that specific document, I'm not certain. He also argued that there wasn't a certification on page 99 of the Administrative Record. The clerk of the court did certify on August 23, 2007, to the document. In that regard, I'm not sure as to how he asserts that these were inadmissible. He doesn't argue that they were inaccurate, inauthentic, or didn't relate to him. While the federal rules of evidence don't apply in immigration court, he hasn't asserted as to why they should not have been considered. His argument seems to be based more on the sufficiency of the proof rather than whether there's a flaw in the proof initially. And the fact that they're admissible, that they were properly considered, their sufficiency is, in the government's opinion, without question in this regard. Furthermore, with respect to his due process argument, Dishner does bear a burden in any due process allegation to show that he suffered prejudice as a result of the alleged error. And his alleged error was that the immigration judge did not afford him an opportunity to object to the evidence. But an empty allegation that he should have been able to object without specifying how they are objectionable or how they should not have made it into the record is really insufficient to establish a due process. But he was pro se, is that right? Yes, Your Honor, he was pro se. But looking at the record during the master calendar hearing on, I believe it was page 55 of the record, I have to be clear, but the immigration judge did ask Dishner several times whether he wanted to get more time to speak with an attorney. After the immigration judge asked whether he understood the right to explain to him, Mr. Mendoza said, yes, sir. He asked, do you want more time to talk with an attorney? He responded, no, sir, I'd like to speak for myself. And I understand he did continue pro se, but he certainly had an opportunity to speak with an attorney. And, you know, any claim that he didn't really have a chance. I'm not sure, counsel, that he had an opportunity to speak with counsel. I don't know what the situation is in, I guess this hearing was in, was it in Phoenix? That would have been in New York. And I know it's very hard to find counsel for people, so to say that he had an opportunity to get counsel is probably not completely accurate. Your Honor, I'm sorry, let me rephrase, let me correct myself. I believe my point was that he was provided the opportunity to indicate whether he wanted to speak with counsel. I suppose that's the proper phrasing. I apologize. In addition, he received the opportunity to examine the evidence submitted by DHS. If you look at the record, the Certificate of Service of the Department of Homeland Security document was 10 days in advance of the hearing. So Petitioner received those documents with ample time to examine them. And, in fact, submitted evidence on his own behalf, including a motion to terminate the following service. Do we know, did he speak English? Let's see here. I do not see on the transcript where there is an interpreter involved. No, I do not. I do not believe there was an interpreter involved, so he was speaking for himself. Yes, Your Honor. Anything further, counsel? No, Your Honor. If there are no further questions, the government posits that the numerous documents in the record were properly considered under INA 240C3B and ACFR 1003.41D, as they were documents prepared by the Court of Conviction indicating the existence of the conviction. Given that the conviction was established, the Board properly determined that Petitioner's conviction under 130.25 subsection 1, which criminalized sexual intercourse with an individual incapable of consenting, qualified as race within the meaning of the INA, and under this Court's definition, it is hospital-biased and does not save them. For that reason, the Court should deny the petition. Okay, counsel. Thank you very much. The case will be submitted at this time. Thank you very much, Your Honor. Okay. Thank you. Bye. Bye.
judges: Fletcher, Noonan, Paez